UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KALIEGH O.,

                 Plaintiff,

v.                                                                                        5:19-CV-940
                                                                                          (TWD)
COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant.
_____

APPEARANCES:                                                    OF COUNSEL:

OLINSKY LAW GROUP                                               HOWARD D. OLINSKY, ESQ.
  *Counsel for Plaintiff*
250 South Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.                                     JAMES J. NAGELBERG, ESQ.
  *Counsel for Defendant*
Social Security Administration
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

      Currently before the Court, in this Social Security action filed by Kaliegh O. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or the "Commissioner") pursuant to

42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion

for judgment on the pleadings.  (Dkt. Nos. 15, 18.)  For the reasons set forth below, Plaintiff's

motion for judgment on the pleadings is granted and Defendant's motion for judgment on the

pleadings is denied. The Commissioner's decision denying Plaintiff's disability benefits is vacated and remanded for further proceedings consistent with this opinion.

## I.      BACKGROUND

On April 2, 2014, Plaintiff protectively filed for Title XVI supplemental social security income alleging disability beginning August 4, 2013. (Administrative Transcript[1] at 73.) Plaintiff's claim was denied on June 30, 2014. T. 74. Plaintiff timely requested a hearing with an Administrative Law Judge ("ALJ"), and such hearing was held on March 2, 2016. T. 39-62. After the hearing, ALJ Marie Greener, issued a partially favorable decision dated, July 5, 2018. T. 10-22. The ALJ found Plaintiff became disabled on May 28, 2015, but not before. T. 11. This decision was challenged in federal court, resulting in a remand. *See O'Brien v. Berryhill*, Civ. No.17-CV-1140 (DJS), Dkt Nos. 1, 19 (N.D.N.Y.). Upon remand, another hearing was held before ALJ Elizabeth W. Koennecke on May 14, 2019. T. 1045-61. ALJ Koennecke concluded Plaintiff was not disabled during the relevant period between April 2, 2014, and May 27, 2015. T. 1024-36.

In her decision, the ALJ found Plaintiff suffered from the severe impairments of diabetes mellitus and a mild intellectual disorder. T. 1030. The ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. T. 1030. The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work as defined in 20 CFR 416.967(a). T. 1032. Specifically, she would be:

> limited in her ability to stand and walk in that she can do so for
> two hours in an eight-hour workday. She had no other exertional

---

[1] The Administrative Transcript is found at Dkt. No. 12. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.

>limitations. She retained the ability to understand and follow simple instructions and directions, perform simple tasks independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with all others to the extent necessary to carry out simple tasks, and handle simple repetitive work-related stress in that she could make occasional decisions directly related to the performance of simple tasks in a stable, unchanging work environment.

*Id*. The ALJ found Plaintiff had no past relevant work, but she could have performed work in the national economy as an assembler, stuffer, and lens inserter. T. 1035-36. Thus, the ALJ found Plaintiff not disabled during the relevant timeframe. T. 1036. Plaintiff bypassed written exceptions and filed suit. Dkt. No. 1. Pursuant to General Order 18, each party submitted supporting briefs this Court treats as competing motions for judgment on the pleadings. (Dkt. Nos. 15, 18.)

The main thrust of Plaintiff's challenge is the ALJ failed to weigh or consider Dr. Jeanne Shapiro's intelligence examination. (Dkt. No. 15.) To that end, Plaintiff argues the ALJ's failure to consider Dr. Shapiro's finding that she had an IQ of 63 and had other social limitations was prejudicial legal error. *Id*. at 11. Plaintiff also contends the ALJ failed to include the social limitations regarding her ability to interact with the public despite those limitations being found in Dr. Rebecca Fisher's report. *Id*. at 13.[2] Defendant, on the other hand, asserts any error in failing to consider Dr. Shapiro's report is harmless and substantial evidence supports the ALJ's decision. (Dkt. No. 18.)

---

[2] In her brief, Plaintiff references Dr. Nobel as being the physician who opined social limitations. (Dkt. No. 15 at 13.) However, after reviewing the record, the Court finds this was a mistake and she intended to refer to Dr. Fischer's report.

3

**II.     DISCUSSION**

    **A.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B. Standard for Benefits[3]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

---

[3] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the SSA promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### C. The ALJ's Treatment of Dr. Shapiro's Intelligence Examination Report

"An ALJ should consider 'all medical opinions received regarding the claimant.'"  *Reider v. Colvin*, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); *see also* SSR 96-8p (SSA), 1996 WL 374184, at *7 (July 2, 1996).  This Court has ordered remand in cases where the ALJ failed to appropriately explain the weight afforded to opinion and medical evidence.  *See Jordan v. Comm'r of Soc. Sec.*, No. 8:15-CV-0436, 2016 WL 3661429, at *5 (N.D.N.Y. July 5, 2016) (finding remand necessary where the ALJ failed to weigh the opinions from two treating physicians); *Campbell v. Astrue*, 713 F. Supp. 2d 129, 140 (N.D.N.Y. 2010) (remanding where the ALJ "did not explain why his findings were contrary, discuss [the State Agency physician's] opinions, or give weight to her opinions"); *Duell v. Astrue*, No. 8:08-CV-0969, 2010 WL 87298,

at *5 (N.D.N.Y. Jan. 5, 2010) (remanding in part due to the ALJ's failure to explain the weight he afforded to the opinions of various consultative physicians and psychologists). However, failure to consider or weigh an opinion may be harmless error where consideration of that opinion would not have changed the outcome. *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the physician's opinion would not change the outcome of the claim) (*citing Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Camarata v. Colvin*, No. 6:14-CV-0578, 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying a request for remand because application of the correct legal standard would not have changed the outcome).

     As noted above, Plaintiff's primary argument is the ALJ failed to mention or discuss Dr. Shapiro's May 3, 2016, opinion and intelligence report.[4] In her intelligence evaluation report, Dr. Shapiro discussed that Plaintiff finished the 9th grade and was in special education classes. T. 988. She also noted Plaintiff's past work and medical history including treatment for psychiatric issues. *Id*. Dr. Shapiro administered an IQ test and reported Plaintiff's "Full Scale IQ" as 63. T. 990. According to Dr. Shapiro, the testing suggests Plaintiff "is functioning in the mild range of an intellectual disability." *Id*. Dr. Shapiro also noted Plaintiff "does not get along well with family" and "has no friends." T. 992.

---

[4] The Court notes this report was created after the relevant period of disability. However, Plaintiff argues—and Defendant does not refute—the report should be considered because it is based on her IQ and regulations and case law assume that an IQ is static after a person's twenty-second birthday. (Dkt. No. 15 at 13 (*citing Vasquez-Ortiz v. Apfel*, 48 F. Supp. 2d 250, 257 (W.D.N.Y. 1999).) For the purpose of this decision, the Court considers Dr. Shapiro's opinion as relevant evidence regarding Plaintiff's mental condition. Nevertheless, on remand, the ALJ should consider whether the timing of this report makes any difference with respect to the functional limitations opined therein.

In her medical source statement, Dr. Shapiro opined Plaintiff had no limitations in understanding and following simple instructions and directions; performing simple tasks; maintaining attention and concentration for tasks; attending to a routine and maintaining a schedule; and dealing with stress. *Id*. She further stated Plaintiff had mild limitations regarding her ability to make appropriate decisions. *Id*. Dr. Shapiro also noted Plaintiff is mild-moderately limited in her ability to consistently relate to and interact well with others. *Id*. Finally, Dr. Shapiro noted moderate limitations in Plaintiff's ability to perform complex tasks and her ability to learn new tasks. *Id*. These limitations, according to Dr. Shapiro, are caused by cognitive deficits. *Id*.

In her decision, the ALJ did not mention or consider Dr. Shapiro's report or the implication of Plaintiff's low IQ score on her ability to work. T. 1032-35. Rather, in formulating Plaintiff's mental RFC the ALJ gave "great weight" to consultative examiner Dr. Rebecca Fisher's opinion. T. 1034. The ALJ noted Dr. Fischer opined Plaintiff has no "limitations in her ability to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, or make appropriate decisions." *Id*. The ALJ further stated Dr. Fischer suggested Plaintiff had a mild limitation in her ability to perform complex tasks independently and a moderate limitation to relate adequately with others and appropriately deal with stress. *Id*.

In formulating Plaintiff's mental RFC, the ALJ also considered Plaintiff's report of daily activities and that she was able to pass a written driver's test when helped with reading. *Id*. According to the ALJ, "these activities require many of the same functions that [Plaintiff] alleges she is unable to perform in a work setting." *Id*. The ALJ also considered, but gave limited

weight to consultative examiner R. Nobel, Ph.D.'s opinion because it was rendered without an examination and Plaintiff had "somewhat greater limitations than those opined." T. 1034-35.

As noted above, under the Agency's regulations, an ALJ "will evaluate every medical opinion we receive." 20 C.F.R. § 416.927(c). From a practical sense, that means the ALJ must not only "adequately explain [her] reasoning in making the findings on which [her] ultimate decision rests," but also must "address *all* pertinent evidence." *Calzada v. Asture*, 753 F. Supp. 2d 250, 269 (S.D.N.Y.2010). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id*. (internal quotation marks omitted); *Rodriguez v. Astrue*, No. 11 CIV. 7720, 2012 WL 4477244, at *30 (S.D.N.Y. Sept. 28, 2012). Here, the ALJ failed to consider or discuss Dr. Shapiro's opinion and report documenting Plaintiff's IQ score of 63. This is legal error. *See e.g.,* SSI Program Operations Manual System ("POMS") § DI. 24583.055 ("We use the results of intelligence tests to assess a person's general intellectual functioning.").

Nevertheless, Defendant argues the ALJ's error is harmless because Plaintiff has not established that, absent the ALJ's mistake, the result would be different. (Dkt. No. 18 at 5.) However, the Court finds Defendant's arguments impermissibly interposes post-hoc rationalizations the ALJ never herself considered. *See, e.g., Petersen v. Astrue*, 2 F. Supp. 3d 223, 234 (N.D.N.Y. 2012) ("[T]his Court may not 'create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.'"). For example, Defendant contends the RFC's limitation to simple tasks is consistent with Dr. Shapiro's report and her opinion Plaintiff has a moderate limitation in learning new tasks. (Dkt. No. 18 at 5.) However, it does not follow that Plaintiff's low functioning as evidenced in her IQ score would *necessarily* result in the same RFC. Rather,

remand is unnecessary "[w]here application of the correct legal standard could lead to *only* one conclusion." *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (emphasis added); *Johnson*, 817 F.2d at 986 ("[W]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration."). In this case, there is at least a reasonable likelihood that a different result could be reached if the ALJ properly considered and weighed Dr. Shapiro's report.

Each of Defendant's other arguments would force this Court to reweigh evidence but it is the ALJ's responsibility to make factual findings in the first instance, not this Court's. *See Bartrum v. Astrue*, 32 F. Supp. 3d 320, 331 (N.D.N.Y. 2012) ("This Court simply cannot, and will not, re-weigh the medical evidence and/or 'create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.'" (citation omitted)); *Booker v. Astrue*, No. 1:07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug. 24, 2011) (indicating that "'it is an elementary rule that the propriety of agency action must be evaluated on the basis of stated reasons,'" and that "a court 'may not properly affirm an administrative action on grounds different than those considered by the agency.'" (citation omitted)). Although this Court must uphold an ALJ's interpretation of the evidence where such interpretation is reasonable and supported by substantial evidence, the problem in this instance is that the ALJ has not provided any indication as to how she interpreted Dr. Shapiro's opinion and Plaintiff's IQ score—the decision does not mention it at all. *See Hart v. Astrue*, 32 F. Supp. 3d 227, 235 (N.D.N.Y. 2012) ("To the extent Dr. Magsino's opinion is capable of more than one reasonable interpretation, this Court must defer to the interpretation of the ALJ and may not substitute its own opinion."); *Brouillette v. Astrue,* 901 F. Supp. 2d 328, 333 (N.D.N.Y. 2012) ("If the evidence is deemed susceptible to more than one rational

interpretation, then the Commissioner's conclusion must be upheld."). Accordingly, Defendant's arguments regarding the nature of Dr. Shapiro's examination and the time when the examination took place are not good reasons to affirm the decision.

In short, though the Commissioner may ultimately find Plaintiff is not disabled, the Court finds Dr. Shapiro's opinion at least reasonably could suggest Plaintiff would be incapable of performing work on a full-time sustained basis because her low intellectual functioning in relation to her IQ score. Thus, the ALJ's failure to discuss the opinion prevents this Court from determining whether substantial evidence supports the ALJ's ultimate conclusions and the error is not harmless. *See Campbell*, 713 F. Supp. 2d at 140.

Moreover, the Commissioner is wrong that Dr. Fischer and Dr. Shapiro's opinions are consistent in "all relevant respects." (Dkt. No. 18 at 6.) Rather, Dr. Fischer opined Plaintiff would have no limitation learning new tasks and making appropriate decisions, T. 445, but Dr. Shapiro opined a moderate limitation in learning new tasks and a mild limitation in making appropriate decisions. T. 992. Furthermore, Dr. Shapiro's opinion included a report of Plaintiff's IQ score—a unique piece of evidence not found in Dr. Fischer's report. Thus, Defendant's reliance on *Zabala*, 595 F.3d 402, is unavailing because the unconsidered evidence is more favorable to Plaintiff and could support a more restrictive RFC.[5]

---

[5] One instance where Dr. Fischer and Dr. Shapiro agree is Plaintiff's moderate limitation interacting with others. T. 445 (Dr. Fischer noting a "[m]oderate limitation in her ability to relate adequately to others"), 992 (Dr. Shapiro stating "[a]ccording to [Plaintiff's] own report, she appears to be mildly-moderately limited [in] her ability to consistently relate to and interact will with others."). Nevertheless, the ALJ did not include any limitation in her RFC with respect to this opined functional limitation despite giving Dr. Fischer's opinion "great weight." Thus, the ALJ's failure to consider Dr. Shapiro's decision also calls into question her conclusion that Plaintiff would not have any limitations interacting with others and, on remand, the ALJ should pay careful attention to whether Plaintiff would be limited interacting with others.

On remand, the Commissioner should explicitly consider Dr. Shapiro's opinion and consider Plaintiff's low IQ score in relation to her functional limitations.

### III. CONCLUSION

In light of the foregoing, the Court finds substantial evidence does not support the ALJ's decision.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

Dated: September 25, 2020
Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge